RECEIVED
AUG 27 2010
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| **GILCHRIST CONSTRUCTION CO. LLC** | **CIVIL ACTION NO. 1:09-cv-01420** |
| -vs- | **JUDGE DRELL** |
| **THOMAS D. DAVIS, JR. et al.** | **MAGISTRATE JUDGE KIRK** |

### R U L I N G

Pending before the Court is a Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion for Abstention (Doc. 6) filed by Defendant Thomas D. Davis, Jr. ("Dr. Davis"). Dr. Davis seeks dismissal of the statutory interpleader action filed by the Plaintiff, Gilchrist Construction Co., L.L.C. ("Gilchrist"), alleging that Gilchrist has failed to provide a bond of a sufficient amount to cover Dr. Davis's claims, and alternatively, that the Court should abstain from exercising jurisdiction to hear this dispute. For the reasons below, Dr. Davis's motion will be GRANTED IN PART, and we abstain from exercising jurisdiction. Disposition will follow by a separate judgment.

I. **Background**

On February 6, 2009, Gilchrist filed a Petition for Concursus and Deposit of Proceeds Into the Registry of the Court (Doc. 6-3, Exh. A) in the Ninth Judicial District Court for the Parish of Rapides. That suit was subsequently transferred to the Thirty-Third Judicial District Court for the Parish of Allen. Dr. Davis and Norma Haggard ("Ms. Haggard") were both named as defendants in this concursus proceeding.

Gilchrist is a domestic road construction company, and was performing road construction services for the State of Louisiana during the time period relevant to the Petition. Specifically, Gilchrist was working along U.S. Highway 165 in Allen Parish and Rapides Parish. Dr. Davis solely owns a tract of land in Allen Parish ("Davis tract"), and co-owns an adjacent tract of land ("co-owned tract") with Norma Haggard ("Ms. Haggard").

In its Petition, Gilchrist alleges that it contracted with Dr. Davis to extract fill dirt from the Davis tract to incorporate into its highway construction project. The contract provided for a "pit measurement" payment system. Under this system, Gilchrist would measure the pit created by its excavations, and would then pay Dr. Davis according to a ratio of dollars per cubic measurement of dirt extracted. Eventually, Gilchrist's excavation on the Davis tract reached the boundary line separating it from the co-owned tract. Gilchrist informed Dr. Davis of this fact. According to the Petition, Dr. Davis authorized Gilchrist to continue its excavations on the co-owned tract, neglecting to inform Gilchrist of Ms. Haggard's ownership interest in the that tract.

Gilchrist later learned of Ms. Haggard's interest in the property. Thereafter, the company conducted a pit measurement analysis on the co-owned tract, and determined that Dr. Davis and Ms. Haggard were entitled to $66,238.90 as a result of the excavations already conducted on the tract. Accordingly, Gilchrist negotiated a release agreement with and issued a settlement check to the co-owners. However, the release agreement was not executed, and the check was not deposited, thus

prompting the filing of this action.

Gilchrist's February 6, 2009 concursus pleading is largely identical to its Complaint in Interpleader (Doc. 7), which was filed in this Court on August 12, 2009. (Doc. 1). Shortly thereafter, on September 28, 2009, Dr. Davis filed the instant Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion for Abstention (Doc. 6), arguing that: (1) the Court lacks subject matter jurisdiction because Gilchrist has not deposited the maximum amount that may be due under the excavation contract; and (2) the Court should abstain in this matter in light of the parallel proceeding currently pending in state court. After careful consideration, the Court rules as follows.

## II. Law and Analysis

### A. Subject Matter Jurisdiction

#### 1. *Governing Standards*

Pursuant to Fed. R. Civ. P. 12(b)(1), a party may obtain dismissal of a claim for lack of subject matter jurisdiction. When considering a Rule 12(b)(1) motion, the Court must "'view all the facts in a light most favorable to the plaintiff.'" Ambraco, Inc. v. Bossclip B.V., 570 F.3d 233, 237-38 (5th Cir. 2009) (quoting Ginter *ex rel.* Ballard v. Belcher, Prendergast & Laporte, 536 F.3d 439, 441 (5th Cir. 2008)). Generally, when the complaint states a "cognizable federal claim, dismissal for want of jurisdiction is disfavored as a matter of policy," and "is only proper in the case of a frivolous or insubstantial claim, i.e., a claim which has no plausible foundation or which is clearly foreclosed by a prior Supreme Court decision.'" Young v. Hosemann, 598 F.3d 184, 188 (5th Cir. 2010) (quoting Bell v. Health-Mor, 549 F.2d 342, 344 (5th Cir. 1977)).

Nonetheless, the party asserting jurisdiction bears the burden of proof on a motion to dismiss. Davis v. United States, 597 F.3d 646, 649 (5th Cir. 2009).

In deciding a Rule 12(b)(1) motion, the Court may consider evidence outside of the pleadings and the attachments thereto. Ambraco, Inc., 570 F.3d at 237-38. In particular, "under Rule 12(b)(1), the court may find a plausible set of facts by considering any of the following: '(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" Lane v. Halliburton, 529 F.3d 548, 557 (5th Cir. 2008) (quoting Barrera-Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996)). However, when the Court must refer to matters outside of the pleadings, "no presumptive truthfulness attaches to the plaintiff's allegations, and the court can decide disputed issues of material fact in order to determine whether or not it has jurisdiction to hear the case." Montez v. Dep't of Navy, 392 F.3d 147, 149 (5th Cir. 2004).

    2.    *The Bond Amount*

Dr. Davis's sole argument regarding the purported lack of subject matter jurisdiction is that the amount of Gilchrist's bond is insufficient to satisfy the full amount of potential liability. However, Gilchrist correctly points out that Dr. Davis has not provided any alternative calculations of the amount owed, or the basis for any such calculation.[1] In his motion, Dr. Davis flatly posits that he "disagrees with such calculation and contends that he is owed significantly more." (Doc. 6-2, p. 5).

---

[1] This is true of both Dr. Davis's original motion and his reply brief.

Gilchrist has submitted evidence (referenced in and attached to the pleadings), which purports to establish that the amount of its bond is more than sufficient to satisfy Dr. Davis's claim.

We begin our analysis by analyzing the interpleader statute, which provides, in full, as follows:

> (a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if
> (1) Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.
>
> (b) Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.

28 U.S.C. § 1335. By its terms, the statute contains the following jurisdictional prerequisites: (1) two or more diverse claimants (2) with adverse claims to "money or property of the value of $500 or more," (3) which is in the "custody or possession" of any "any person, firm, or corporation, association, or society," and which entity (4)

has "given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper." Id.

This Court's plain reading of these requirements yields no question regarding our jurisdiction to hear this dispute. We certainly have before us two adverse claimants, with adverse claims to property valued at $500 or more in the custody or possession of a company which has given a bond exceeding the disputed amount. Moreover, the statute is silent with regard to a claimant's purported right to strip this Court of special statutory jurisdiction by merely alleging, without evidentiary basis, that the claimed amount is disputed.[2] It follows, then, that we must rely upon the evidenced amount claimed in the interpleader action, absent some showing that the amount is incorrect. That is the case here, where the only substantiated amount has been submitted to the Court by bond.

However, Dr. Davis claims that his dispute with the amount divests this Court of jurisdiction. We agree that, in the Fifth Circuit, "the deposit requirement is a jurisdictional prerequisite to suit under the interpleader statute." Murphy v. Travelers Ins. Co., 534 F.2d 1155, 1159 (5th Cir. 1976). But, the Fifth Circuit also held that, in interpleader actions, "[t]he preferred practice is to require only that the stakeholder deposit all of the disputed property he has in his possession, even though it might be less than is claimed by one or more of the defendants." Id. (quoting C. Wright & A. Miller, Federal Practice and Procedure § 1716 at 459 (1972)).

---

[2] To the contrary, as we will discuss below, related statutes contemplate that the stakeholder may be compelled to remain a party to the interpleader action, likely because the stakeholder may be compelled to supplement its deposit or bond.

Thus, the court held that payment of the face amount of an insurance policy is sufficient to establish interpleader jurisdiction, reasoning as follows:

> The language of 28 U.S.C. § 1335(a) refers to " money or property" in the "custody or possession" of the party seeking interpleader. The plain language of the statute clearly refers to tangible property interests or interests evidenced by a "note, bond, certificate, policy of insurance" or other similar intangible document of definite, ascertainable value. An inchoate, uncertain claim for attorney's fees or chose in action asserted against the general assets of a party rather than specific, identifiable "property" is not a proper subject for interpleader relief. Adopting appellant's reasoning would not only compel reversal of this case, it would unduly broaden federal interpleader jurisdiction to include virtually any contingent or inchoate claim which might ultimately be the subject of litigation.

Id. The court's rationale echoed in the more recent version of Wright and Miller's treatise:

> Although in most cases the contested property deposited by the stakeholder will satisfy all the claims of the defendants, sometimes that is not the case. Under those circumstances, the preferred practice is to require only that the stakeholder deposit all of the disputed property in his possession, even though it might be less than is claimed by one or more of the defendants. The Fifth Circuit has indicated the reasons for this slight relaxation of the deposit requirement as follows:
>
>> The words "such property" [in the interpleader statute] logically refer to property in plaintiff's custody or possession; it follows that the statute does not require a plaintiff, in order to obtain jurisdiction, to perform the impossible condition of depositing into court specific property which he does not have in his possession, provided of course that he can and does deposit money or specific property in his possession of the value of $500 or more, and which is the subject of conflicting claims of the defendants.
>
> The court also made it clear that the stakeholder must not have acted wrongfully with regard to the property and will be required to give a "reasonable explanation" why all of it is not in his possession, as well as stand ready "to do anything reasonably necessary to recover all of the

property and place in the court the power to deal with it."

C. Wright & A. Miller, Federal Practice and Procedure § 1716 at 653-54 (3d ed. 2001) (quoting Austin v. Texas-Ohio Gas Co., 218 F.2d 739, 744-46 (5th Cir. 1955)). The treatise also states that, "[o]n occasion . . . the court will need to inquire into the underlying merits of a claim to determine the proper amount of the deposit or bond." Id. at § 1716 at 649.

In this case, it is uncontested that Gilchrist submitted to the Court a bond in the amount of $66,238.90. (Doc. 1-2). This is the amount which was calculated in accordance with the Agreement to Buy/Sell Dirt (Doc. 8-1, Exh. A), and which was executed by Dr. Davis. At this juncture, there is absolutely no evidence, or even a logical argument, indicating that the disputed amount exceeds Gilchrist's bond amount. The argument is nothing more than a conclusory allegation.

That fact is critical to our decision. In deciding a motion to dismiss, this Court must place the burden of proof upon the plaintiff invoking jurisdiction, and must "'view all the facts in a light most favorable to the plaintiff.'" Ambraco, Inc., 570 F.3d at 237-38 (quoting Ginter ex rel. Ballard, 536 F.3d at 441). By describing its calculation, and identifying the document upon which that calculation is based, Gilchrist has satisfied its burden of proof in establishing that the bond amount meets, or exceeds, the amount properly in dispute. Dr. Davis' argument to the contrary is a naked assertion of discord. To conclude that such an assertion deprives this Court of jurisdiction would be to subject every other interpleader to similarly unsubstantiated challenges. Furthermore, that result would destroy the

stakeholder's ability to carry its burden of proof by submitting evidence of the amount of potential liability. In the Court's view, that cannot be the intent of this special jurisdictional statute.

Nonetheless, even if we were to ignore the conclusory nature of Dr. Davis's argument, Gilchrist has established jurisdiction under 28 U.S.C. § 1335. The Murphy court held, albeit in different circumstances, that a stakeholder may satisfy the deposit requirement even if one or more of the defendants claims a different amount. See 534 F.2d at 1159. Here, once again, Gilchrist has submitted the funds in its possession "evidenced by . . . [an] intangible document of definite, ascertainable value" – namely, the Agreement to Buy/Sell Dirt (Doc. 8-1, Exh. A).[3] Dr. Davis has failed to properly challenge that submission. In the absence of any countervailing evidence or argument, we are constrained to find that Gilchrist met the deposit requirement, and has thus satisfied the jurisdictional prerequisites of § 1335.

### B. Abstention

Dr. Davis also argues that the Court should exercise its discretion to abstain from hearing this interpleader action, because a virtually identical proceeding is currently pending in state court. Because we find that exceptional circumstances are present in this case which justify abstention, we will grant Dr. Davis's motion on this

---

[3] The court is aware of district court opinions which seemingly interpret the Murphy decision to reach the opposite conclusion. See, e.g., Conrad v. Countrywide Home Loans, Inc., No. 06-5764, 2006 WL 3524301, at *1-2 (E.D. La. Dec. 5, 2006); Irons v. US Bank, Inc., No. 06-4225, 2006 WL 2548282, at *2 (E.D. La. Aug. 30, 2006). These cases, however, are not binding upon this Court. Moreover, the cases are factually distinguishable, because the plaintiffs in both failed to deposit *any funds*, and thus, failed to establish subject matter jurisdiction at the time of filing. In this case, Gilchrist provided a bond at the time that it filed this action, and the amount of that bond, as discussed above, met the only substantiated figure that has been presented to the Court.

basis alone.

### 1. *The Proper Basis of Abstention*

First, we must resolved a threshold question concerning the proper standards which should guide our decision on whether to abstain in this case. Dr. Davis argues that the Court should abstain under the principles articulated by the United States Supreme Court in Brillhart v. Excess Insurance Co., 316 U.S. 491 (1942). By contrast, Gilchrist argues that, under settled Fifth Circuit precedent, Brillhart is inapplicable to this suit. Instead, according to Gilchrist, the Court's decision must be guided by the principles set forth in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976).

Our determination of which abstention standards to apply is dependent upon the form of relief sought:

> This court applies one of two tests when reviewing a district court's exercise of its discretion to stay because of an ongoing parallel state proceeding. "When a district court is considering abstaining from exercising jurisdiction over a declaratory judgment action, it must apply the standard derived from [Brillhart]. . . ." However, when an action involves coercive relief, the district court must apply the abstention standard set forth in [Colorado River].

New England Ins. Co. v. Barnett, 561 F.3d 392, 394-95 (5th Cir. 2009) (quoting Southwind Aviation, Inc. v. Bergen Aviation, Inc., 23 F.3d 948, 950 (5th Cir. 1994)) (internal citations omitted). Moreover, in the Fifth Circuit, there are only "two exceptions to application of the Colorado River standard if the claims for coercive relief are frivolous or if the claims for coercive relief were added as a means of defeating Brillhart." Id. (citing Kelly Inv., Inc. v. Cont'l Common Corp., 315 F.3d 494,

10

497 n.4 (5th Cir. 2002)).

In this case, the Court has before it requests for both declaratory and coercive (injunctive) relief. In the Complaint, Gilchrist requests that the Court issue an injunction prohibiting Dr. Davis and Ms. Haggard from instituting or prosecuting any parallel proceedings in state court. (Doc. 1, p. 6). The injunction sought by Gilchrist is a well-recognized statutory device:

> In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court. Such process and order shall be returnable at such time as the court or judge thereof directs, and shall be addressed to and served by the United States marshals for the respective districts where the claimants reside or may be found.
>
> Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.

28 U.S.C. § 2361.[4] Issuance of an injunction under § 2361 for purposes of federal interpleader actions has been sanctioned by the Supreme Court. See Mitchum v. Foster, 407 U.S. 225, 234 (1972). Moreover, given the ongoing parallel proceedings in state court, Gilchrist's request is advisable and appropriate. Therefore, the Court finds that Gilchrist's request for injunctive relief is not frivolous.

Finally, the Fifth Circuit has "also rejected the argument that coercive claims that are merely 'ancillary' to the declaratory action [such as a claim for an injunction]

---

[4] This statute provies that the Court "may discharge the plaintiff from further liability." The import of this clause is that the Court may also decline to dismiss the plaintiff because additional bases of monetary liability may be proven in the future, which would require the plaintiff to supplement its deposit or bond.

are not sufficient to warrant application of Colorado River." New England Ins. Co., 561 F.3d at 397. Thus, the mere fact that the Gilchrist's request for injunction is dependent upon, or "ancillary to," the claim for declaratory relief is inapposite to our analysis. "[W]hen an action contains any claim for coercive relief, the Colorado River abstention doctrine is ordinarily applicable." Kelly Inv., Inc., 315 F.3d at 497 n.4. Because this action contains a non-frivolous claim for coercive relief, the Court must apply the Colorado River standard in deciding whether to abstain.

> 2. *Colorado River Abstention*

We begin our analysis with the premise that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Colorado River, 424 U.S. at 817. Abstention is warranted only "in 'exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest,' such as considerations of 'proper constitutional adjudication, regard for federal-state relations, or wise judicial administration.'" Diamond Offshore Co. v. A&B Builders, Inc., 302 F.3d 531, 538 (5th Cir. 2002) (quoting Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996)). "Unless there is a legitimate reason to abstain, federal courts 'cannot abdicate their authority or duty in any case in favor of another jurisdiction.'" Vulcan Materials Co. v. City of Tehuacana, 238 F.3d 382, 390 (5th Cir. 2001) (quoting New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 358 (1989)).

The Court may consider abstention under Colorado River only "when there are parallel proceedings pending in federal and state court." Diamond Offshore Co., 302 F.3d at 540. "Suits are 'parallel,' for the purposes of determining whether Colorado

River abstention applies, if they 'involv[e] the same parties and the same issues.'" Id. (quoting RepublicBank Dallas Nat. Ass'n v. McIntosh, 828 F.2d 1120, 1121 (5th Cir. 1987)). At present, there is a parallel proceeding in state court. Specifically, Gilchrist filed a concursus proceeding in the Ninth Judicial District Court on February 6, 2009. (Doc. 6-3, Exh. A). The case has since been transferred to Allen Parish, and is basically identical to this interpleader action, as both involve the same parties and issues.

Having concluded that there is a parallel proceeding in state court, we now apply guidelines established by the Supreme Court in Colorado River. The Brillhart standard – which Dr. Davis suggested should apply – "affords a district court broad discretion in determining whether to hear an action brought pursuant to the Declaratory Judgment Act." New England Ins. Co., 561 F.3d at 394. By contrast, "[u]nder the Colorado River standard, the district court's discretion to dismiss is 'narrowly circumscribed' and is governed by a broader 'exceptional circumstances' standard." Id. In order to determine whether such "exceptional circumstances" exist, the Court must consider the following six factors outlined in Colorado River:

> (1) assumption by either court of jurisdiction over a res, (2) relative inconvenience of the forums, (3) avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained by the concurrent forums, (5) to what extent federal law provides the rules of decision on the merits, and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.

Kelly Inv., Inc., 315 F.3d at 497 (quoting Diamond Offshore Co., 302 F.3d at 540 n.6). We consider each of these factors in turn.

First, the state court has assumed jurisdiction over the res, or the funds,

involved in the concursus proceeding. By order dated February 6, 2009, which was the date that the concursus proceeding was filed, the Ninth Judicial District Court granted Gilchrist leave to deposit the funds into the registry of the court. (Doc. 6-3, Exh. A). As such, the state court assumed jurisdiction over the disputed funds approximately six months before this Court. The second factor, which relates to the relative inconvenience of the concurrent forums, is arguably counterbalancing. Gilchrist is situated in Rapides Parish, while Dr. Davis is a resident of Allen Parish. Because the distance between these two parishes is negligible, adjudication of this dispute in either court would not be unduly burdensome for either party.

The third factor – avoidance of piecemeal litigation – favors abstention. Aside from the previously filed parallel concursus proceeding, there is also a Petition for Partition (Doc. 6-3, Exh. B) currently pending in the Thirty-Third Judicial District Court. Resolution of this suit could arguably, and may indeed *likely*, impact the proper division of the disputed funds between Dr. Davis and Ms. Haggard. This interpleader action would necessarily have to consider ownership percentages, and thus creates the danger of inconsistent results. We have no jurisdiction over the partition suit. Although we may enjoin the state court proceedings, claims in this federal litigation seeking to assign ownership interests in the property would be duplicative of the state partition suit, which has already been pending for approximately seventeen months.

Likewise, the fourth and fifth factors both militate strongly in favor of abstention. The Ninth Judicial District Court originally assumed jurisdiction over this

case on February 6, 2009, approximately eighteen months ago, and approximately six months before this action was filed on August 12, 2009. Thus, although the case has since been transferred to Allen Parish, the state courts obtained jurisdiction well before this Court. Additionally, under the fifth factor, we must determine the extent to which federal substantive law will apply. The answer to that inquiry, of course, is that federal law has no bearing upon the outcome of the litigation whatsoever; state substantive law is controlling in this dispute.

Finally, we come to the crux of Gilchrist's motion: the allegation that it may not receive fair treatment in the state courts of Allen Parish. This allegation speaks directly to the sixth Colorado River factor: whether the proceedings in state court adequately protect the rights of the party invoking federal jurisdiction. Gilchrist notes that Dr. Davis's brother is the Chief Judge presiding in the Thirty-Third Judicial District Court. Therefrom, Gilchrist argues that "Dr. Davis, and his attorney and brother, Michael Davis, have done everything in their power to gain the unfair advantage of having this matter litigated in a venue where their family exerts substantial presence and influence." (Doc. 8, pp. 1-2).

However, the state courts have determined that Allen Parish is the proper venue for the adjudication of this dispute. The Court is mindful of Gilchrist's concerns regarding the chief judge's relationship with Dr. Davis, and the specter of that judge's exerting influence or being an intimidating presence in the case. However, this case is not assigned to Judge Davis, and neither this Court, nor either of the parties, may properly assume that other judges would be unfair, or are inherently

corrupt. In fact, the presumption must be otherwise. In addition, Louisiana law provides adequate remedies by way of recusal if any judge of the Thirty-Third Judicial District Court is unable to be fair and impartial in this case.

In sum, the Court concludes that four of the six <u>Colorado River</u> factors militate in favor of abstention, while neither of the other two factors lends significant support to Gilchrist's position. Therefore, the Court find that "exceptional circumstances" exist in this case which warrant abstention under the principles elucidated by the Supreme Court in <u>Colorado River</u>.

### III. <u>Conclusion</u>

Dr. Davis's arguments regarding the proper amount of funds to be deposited by Gilchrist are legally and factually unfounded. Thus, the Court appropriately assumed jurisdiction over this statutory impleader action. By Gilchrist's own admission, that action was filed in an effort to avoid potential bias in Dr. Davis's home parish. To repeat, the Court is cognizant of Gilchrist's concerns. However, filing multiple identical lawsuits in separate venues is the exemplar of "forum shopping." More importantly, the circumstances of this case weigh substantially in favor of abstention. Thus, the Court will grant Dr. Davis's motion and dismiss this action, confident that the state court will afford both parties an unbiased and equitable result. The bond filed by Gilchrist will be ordered CANCELLED.

SIGNED on this 26 day of August, 2010 at Alexandria, Louisiana.